

# *ORIGINAL*

NOT FOR OFFICIAL PUBLICATION
*See* Okla.Sup.Ct.R. 1.200 before citing.

IN THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA

DIVISION IV

| | |
|---|---|
| DIANE MARTIN, as Personal Representative of the Estate of Emmett Martin, Deceased, | ) ) ) ) |
| Plaintiff/Appellant, | ) ) |
| and | ) ) |
| SABRINA MARTIN, | ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| THE BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF OKLAHOMA COUNTY, THE OKLAHOMA COUNTY SHERIFF, P.D. TAYLOR, in his official capacity, and ANDRES SANCHEZ, in his individual capacity; ARMOR CORRECTIONAL HEALTH SERVICES, INC., | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants/Appellees. | ) ) |

**FILED**
COURT OF CIVIL APPEALS
STATE OF OKLAHOMA

**FEB 27 2024**

JOHN D. HADDEN
CLERK

Case No. 120,422

Rec'd (date) 2-27-24
Posted _____
Mailed _____
Distrib _____
Publish _____ yes _X_ no

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE SUSAN STALLINGS, TRIAL JUDGE

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS

Richard M. Healy, III
Robert Ray Jones, Jr.
LYTLE SOULE´& FELTY, P.C.
Oklahoma City, Oklahoma                    For Plaintiff/Appellant

Vicki Zemp Behenna
OKLAHOMA COUNTY
DISTRICT ATTORNEY
Aaron Etherington
Rodney J. Heggy
Carri A. Remillard
ASSISTANT DISTRICT                         For Defendant/Appellee
ATTORNEYS                                  Oklahoma County
Oklahoma City, Oklahoma                    Sheriff

James K. Secrest, III
Edward J. Main
SECREST, HILL, BUTLER                      For Defendant/Appellee
& SECREST                                  Armor Correctional
Tulsa, Oklahoma                            Health Services, Inc.


OPINION BY STACIE L. HIXON, JUDGE:

Diane Martin, as Personal Representative for the Estate of Emmett Martin

("Estate"), appeals the dismissal of the Estate's claims against Defendant Armor

Correctional Health Services, Inc. ("Armor") arising from Emmett Martin's death

while detained at the Oklahoma County jail.  Estate also appeals summary

adjudication in favor of Oklahoma Sheriff P.D. Taylor in his official capacity,[1]

---

[1]Estate acknowledged in response to Sheriff's motion for summary judgment that the suit against Sheriff is a suit against the entity he represents, which it contends was required to be named as the Board of County Commissioners of Oklahoma County ("Oklahoma County").  *See Pelligrino v. State ex rel. Cameron Univ.,* 2003 OK 2, ¶ 5, 63 P.3d 535; 19 O.S.2011, § 4.

arising from this same incident.  On review of the record, we affirm the trial

court's order dismissing Estate's claims against Armor.  We reverse the trial

court's order granting summary judgment to Sheriff on Estate's claim for violation

of Okla. Const. art. 2, § 30, i.e., excessive force claim, and any wrongful death

claim arising therefrom.[2]

## BACKGROUND

Emmett Martin ("Martin") died while detained at the Oklahoma County jail

on December 3, 2013.  Estate filed this action on November 6, 2018, alleging that

the actions of Sheriff's and Armor's employees caused Martin's death.[3]

Estate's Amended Petition generally alleged that Martin was incarcerated on

a bench warrant after he failed to appear at an asset hearing in small claims court.

He refused to put on a uniform or smock.  Detention officers entered the cell to

retrieve it.  Martin reportedly stuck his hand in the door, preventing it from closing.

Several officers reported to the cell, and cuffed Martin's left hand.  He was

---

Sheriff's motion for summary judgment did not specifically move on behalf of himself and
Oklahoma County, though it mentions Oklahoma County's liability interchangeably.  Further,
the trial court's order on summary judgment did not specifically grant summary judgment to
Oklahoma County.  However, given Estate's acknowledgment that its claim against Sheriff is a
claim against Oklahoma County, we conclude the trial court's order disposes of this claim, and
this appeal may proceed.

[2] The trial court also granted summary judgment on the claims of Sabrina Martin.
Ms. Martin did not appeal those rulings.

[3] Estate filed this action on November 6, 2018.  It was commenced after a prior action in
the United States District Court of the Western District of Oklahoma was dismissed without
prejudice in November 2017.

eventually taken to the ground.  After officer Andres Sanchez cuffed Martin's
hands behind his back, Sanchez allegedly wrenched the cuffs back and forth with
force, and yanked Martin up from the floor by his handcuffs.  Estate alleged that
other named officers witnessed this use of force but did not intervene, and that this
excessive use of force continued on the way to and at the infirmary.

According to Estate, Martin was taken to the infirmary to be treated for cuts
on his wrists from the cuffs and was taken back to another cell.  While trying to
uncuff Martin, detention officers allegedly pressed the cuffs into his rib cage,
causing extreme pain.  During this process, Sanchez rotated Martin's left arm into
an unnatural position, deforming it.  Martin was returned to the jail infirmary,
where nurses visibly determined Martin's left elbow was dislocated.  Estate alleged
nurses failed to conduct any other assessment, though they had reason to do so.[4]
As a result of use of force, Estate asserted that Martin had actually incurred
numerous injuries, including a rib puncture to the back of the right lung, a
dislocated right shoulder with internal hemorrhaging, and a dislocated left elbow
with internal hemorrhaging.  Martin was returned to his cell, where he purportedly
lost control of his bodily functions, which nurses allegedly failed to report to a

---

[4] Estate alleged that officers initially failed to inform Armor nurses of the extent of the
use of force on Martin.  However, Estate also alleged that an officer informed nurses on their
second visit to the infirmary that they should x-ray both the right and left shoulders or arms.

doctor or physician's assistant.  Estate claims Martin was then left in his cell for a protracted period without further visit from jail or infirmary staff and he died.

Estate's Amended Petition asserted claims for (1) excessive force in violation of the Oklahoma Constitution against Sanchez, Oklahoma County, and Sheriff on the basis of *respondeat superior*; (2) negligence, gross negligence or recklessness against Armor, based on the actions of its nurses; (3) a "wrongful death/survival claim" under state tort law against Oklahoma County for the acts of its employees based on the use of alleged excessive force and failure to intervene; and (4) a "wrongful death/survival claim" against Sanchez for acts outside of his scope of employment.

Armor moved to dismiss Estate's Amended Petition, asserting immunity under the Governmental Tort Claims Act ("GTCA") as a statutorily defined employee of the State, and on the doctrine of common law release.[5]  The court granted Armor's motion by order of June 5, 2019.

Oklahoma County, Sheriff and Sanchez contended that Martin resisted throughout his encounter with detention officers as well as during treatment in the infirmary, necessitating use of force.  Subsequently, Sheriff moved for summary adjudication on multiple grounds, including that:  1) Estate's *Bosh* (constitutional/

---

[5] Though not included in the record, the trial court apparently granted a previous Motion to Dismiss the original petition but allowed Armor to amend to state a claim against Armor based on acts outside the scope of employment.

excessive force) claim was brought outside the asserted one-year statute of limitation, (2) the undisputed facts demonstrated Estate could not establish essential elements of a claim based on excessive force, and (3) the State was immune from wrongful death claims based on acts within the employee's scope of employment.  Additionally, Sheriff asserted that Estate had dismissed officers other than Sanchez from a related federal suit and thereby had released any vicarious liability claim against Sheriff based on their conduct.

The trial court granted Sheriff's motion for summary judgment on July 30, 2020.  Thereafter, the trial court granted Sanchez's motion for summary judgment in part, leaving pending a claim against Sanchez based on alleged acts outside the scope of employment.  Following summary judgment, the trial court certified the matter for immediate appeal in prior Case No. 119,348.  The Oklahoma Supreme Court dismissed that appeal as premature.

Estate later dismissed its remaining claims against Sanchez.  It now appeals the dismissal of Armor and summary adjudication granted in favor of Sheriff.[6]

## STANDARD OF REVIEW

We review the trial court's grant of Armor's motion to dismiss for failure to state a claim upon which relief may be granted *de novo.*  The purpose of a motion to dismiss is to test the law governing the claim, not the underlying facts.

---

[6] Estate did not appeal the order granting summary judgment to Sanchez.

*Darrow v. Integris Health, Inc.,* 2008 OK 1, ¶ 7, 176 P.3d 1204. "A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief." *Id.* When ruling on a motion to dismiss, we take the plaintiff's allegations as true, along with all reasonable inferences which may be drawn from them. *Great Plains Federal Sav. And Loan Ass'n v. Dabney,* 1993 OK 4, ¶ 2 n.3, 846 P.2d 1088. "A plaintiff is required neither to identify a specific theory of recovery nor to set out the correct remedy or relief to which he may be entitled." *May v. Mid-Century Ins. Co.,* 2006 OK 100, ¶ 10, 151 P.3d 132. "If relief is possible under any set of facts which can be established as is consistent with the allegations, a motion to dismiss should be denied." *Id.*

"Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051. "Therefore, as the decision involves purely legal determinations the appellate standard of review of a trial court's grant of summary judgment is *de novo*." *Id.* The Court will "examine the pleadings and evidentiary materials to determine what facts are material to plaintiff's cause of action, and to determine whether the evidentiary materials introduced indicate whether there is a

7

substantial controversy as to one material fact and that this fact is in the movant's favor." *Ross by and through Ross v. City of Shawnee*, 1984 OK 43, ¶ 7, 683 P.2d 535. All inferences and conclusions to be drawn therefrom are viewed in the light most favorable to the nonmoving party. *Id.*

## A.    Armor's Motion to Dismiss

Estate asserts the trial court erred by finding that Armor was considered an employee of the State under the GTCA, and thus immune from suit individually.[7] Alternatively, Estate argues the trial court erred by dismissing Armor, given its allegations of conduct that Estate claimed was so egregious to be considered conduct outside the scope of its employment, and not subject to immunity under the GTCA.

First, the trial court did not err by determining that Armor was considered an employee of the State and could not be sued individually for acts within the scope of employment. Title 51 O.S.2011, § 152.1, in force at the time Martin died, extended immunity to the "state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." Employee was defined to include "licensed medical professionals under contract

---

[7] The caption of Plaintiff's Amended Petition lists Armor employee Sharon Martin as an individual defendant. However, the Amended Petition asserts no claim against Ms. Martin and the record does not reflect she was ever served, to the extent she was intended to be a party.

with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies. . . ." 51 O.S. 2011, § 152(7)(b)(7).[8]

In *Barrios v. Haskell Cty. Public Facilities Auth.*, 2018 OK 90, ¶ 4 n.5, 432 P.3d 233, the Supreme Court stated, "generally speaking, the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA by virtue of sections 152(7)(b), 153(A), and 155(25)."[9] Estate's Amended Petition alleged that Armor "is the contractor that provides medical services to the Oklahoma County Jail and its employees [are] Vicky McDonald and Sharon Martin."[10] Further, Estate alleged that Armor's nurses, "in the course and scope of their positions as medical provider to inmates incarcerated at in the Oklahoma County Jail, and/or employees and licensed medical practitioners of Armor" failed to adequately assess or report Martin's alleged injuries. Taking these allegations as

---

[8] Section 152 has been amended several times since Martin's death, but this provision remains the same.

[9] Title 51 O.S.2021, § 153(A) provides the state or political subdivision is liable for loss resulting from torts of its employees acting within the scope of their employment, subject to the limitations specified in the GTCA, and only where liable for money damages under Oklahoma law. Title 51 O.S.2021, § 155(25), provides the state and its political subdivisions are immune from suit for claims or loss resulting from "provision, equipping, operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner or injuries by a prisoner to any other prisoner; . . . ." Though section 155(25) has been amended several times since Martin's death, this provision remains the same.

[10] Estate's Response to Armor's Motion to Dismiss its Amended Petition contains no arguments on the issue of whether Armor is or is not an employee under the GTCA but attempted to incorporate its arguments in earlier briefing by reference. Those materials are not included in the record and are therefore not considered.

9

true, the trial court properly dismissed Armor as immune from liability for acts alleged within the course and scope of its employee's employment.[11]

Estate also alleged the trial court erred by dismissing its claims against Armor for acts outside of its scope of employment. We disagree.

At the time of Martin's death, the GTCA defined "scope of employment" as follows:

> [P]erformance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud; . . . .

51 O.S.2011, § 152(12). The GTCA rules out the State's liability "for any act or omission of an employee acting outside the scope of his employment." *Mustain v. Grand River Dam Auth.*, 2003 OK 43, ¶ 21, 68 P.3d 991, as corrected (Apr. 23, 2003), as corrected (May 7, 2003); 51 O.S.2011, § 153(A). An employee whose acts are "malicious, willful, wanton and in bad faith is not acting in the scope of his employment." *Mustain*, 2003 OK 43, at ¶ 21.

While Estate alleged Armor's conduct was willful, wanton and in reckless disregard of the rights of others, Estate did not allege Armor's conduct was intentional, malicious or in bad faith. An allegation of reckless disregard does not,

---

[11] Because we affirm the trial court on this issue, we do not reach Armor's alternate argument that Estate released Armor by failing to name its nurses in this action, despite having named and dismissed them in the federal action.

in itself, plead such conduct. In *Gowens v. Barstow*, 2015 OK 85, ¶ 21, 364 P.3d 644, the Oklahoma Supreme Court considered whether an employee's reckless conduct in causing an automobile accident would fall outside of the scope his employment with the state or a political subdivision. The Court recognized that malicious, bad faith conduct is a necessary element of some torts, but not of the negligence claim asserted in that case. *Id.* at ¶¶ 19, 22. The Court then compared the Oklahoma Uniform Jury Instruction's definition of an act done in reckless disregard of the rights of others, which requires no showing of intentional, malicious conduct,[12] with the definition of conduct intentional and with malice, which requires conduct involving "either hatred, spite, or ill-will, or else the doing of a wrongful act intentionally without just cause or excuse." *Id.* at ¶ 21. The Court concluded that acts performed in reckless disregard did not automatically arise to a level constituting malice or bad faith, and such a determination must be made on a case-by-case basis. *Id.* at ¶ 21.

In this case, Estate's factual allegations, taken as true, might be considered negligent, but do not give rise to an inference of conduct falling outside of the scope of employment. Specifically, Estate alleges that Armor,

---

[12] Oklahoma Uniform Jury Instruction (CIVIL) No. 5.6 defined reckless disregard of the rights of others as when a defendant "was either aware, or did not care, that there was a substantial and unnecessary risk that [his] conduct would cause serious injury to others" and that the conduct be "unreasonable under the circumstances" with a high probability the harm would cause serious harm to another.

observed Emmett Martin's injuries and symptoms and failed to report them, and failed to conduct a physical assessment of Emmett Martin when the opportunity was available to ascertain the extent of his injuries. . . even after a report to the jail staff that both of Martin's arms should be examined. . . .

In the alternative . . . [i]n failing to provide slight care or exercising slight diligence, or omitting to perform their duties to ascertain the life threatening injuries of Emmett Martin in willful, wanton and reckless disregard of his rights.

While we have combed Estate's Amended Petition and taken all factual allegations as true, its allegations fall short of pleading intentional, malicious, or bad faith conduct necessary to support a claim against Armor, despite having had opportunity to do so.[13]  For this reason, we find the trial court did not err by dismissing Estate's claims against Armor and affirm that order.

## B.      Sheriff and/or Oklahoma County

The trial court's order granting Sheriff summary adjudication did not identify the grounds upon which judgment was granted.  We may affirm the trial court on any ground, to the extent it is supported by the record.  We consider Estate's propositions of error in turn.

### 1.  Statute of limitations

Sheriff argued that Estate's claim was barred by a one-year statute of

---

[13] Martin does allege Armor's conduct was "willful."  "Under the doctrine of *respondeat superior*, an employer is generally held liable for the willful acts of an employee acting within the scope of employment."  *Gowens v. Barstow*, 2015 OK 85, at ¶ 12.  That allegation by itself is not sufficient to plead a claim for acts outside the scope of employment.

limitations found at 12 O.S.2011, § 95(11).[14]  However, Estate asserts its claim was subject to the Oklahoma Corrections Act of 1967, 57 O.S.2021, § 501 *et. seq.*, which it contends applies the notice provisions of the GTCA to Estate's claim and tolled the statute of limitations until notice was denied.[15]

The parties appear to agree that Estate's claim for excessive force arose at a time when that claim was not subject to the provisions of the GTCA. *See generally Bosh v. Cherokee Cnty. Gov. Bld. Auth.*, 2013 OK 9, 305 P.3d 994, *superceded by statute*; *Barrios*, 2018 OK 90.  *Bosh* previously held that Okla. Const. art. 2, § 30 provides a private cause of action for excessive force, notwithstanding the limitations of the GTCA, 51 O.S.2011, §§ 151 *et seq. Bosh*, 2013 OK 9, at ¶ 33.  As recognized in *Barrios*, the Oklahoma Legislature later amended the GTCA's definition of tort in 51 O.S. Supp. 2014, § 152(14) to include state constitutional claims.  *Id.* at ¶ 10.  However, because Estate's claim arose before that amendment, Sheriff contends Estate could not rely on the GTCA to toll the statute of limitations in this case, and thus was required to file its claim within a year from Martin's death.

---

[14] Section 95(11) applies to actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of the State or a political subdivision.

[15] Sheriff does not appear to dispute that Estate provided timely notice as alleged in the Amended Petition, that it was deemed denied, and suit was timely filed thereafter if subject to the GTCA.

In response, Estate cites section 566.4(B)(2) of the Oklahoma Corrections

Act, which states in pertinent part:

> 2. No tort action or civil claim may be filed against any employee,
> agent, or servant of the state, the Department of Corrections, private
> correctional company, or any county jail or any city jail alleging acts
> related to the duties of the employee, agent or servant, until all of the
> notice provisions of the Governmental Tort Claims Act have been
> fully complied with by the claimant. This requirement shall apply to
> any claim against an employee of the state, the Department of
> Corrections, or any county jail or city jail in either their official or
> individual capacity, and to any claim against a private correctional
> contractor and its employees for actions taken pursuant to or in
> connection with a governmental contract.

Section 566.4 "addresses lawsuits brought by current or former prisoners against

the state or a municipality (or private correctional company), or their employees,

for injuries alleged to have been suffered while the plaintiff was incarcerated or

detained." *Burnett v. Middleton*, 2011 OK CIV APP 11, ¶ 7, 246 P.3d 464. If

section 566.4 applies, it is a "mandatory prerequisite jurisdictional requirement" to

filing a claim. *See Hall v. Geo*, 2014 OK 22, ¶ 1, 324 P.3d 399.[16] Estate reasons

section 566.4 required it to comply with the GTCA notice provisions, regardless of

---

[16] The Court also relied on 57 O.S.2021, § 566.5, which requires an inmate to exhaust
administrative and statutory remedies against the state, the Department of Corrections, private
entities contracting to provide correctional services, or an employee of the state or DOC, as a
jurisdictional requirement, prior to filing suit. *Hall*, 2014 OK 22, at ¶ 13.

whether the Act would otherwise have applied.  Conversely, Sheriff argues section 566.4 cannot apply *because* Estate's claim was not subject to the GTCA.[17]

We reject Sheriff's argument.  It was within the Legislature's purview to apply the GTCA's notice requirements to the claims set forth in section 566.4, and the Legislature clearly intended to do so.  Section 566.4 applies to tort and other *civil* claims, even those which would apparently fall outside the GTCA.[18]  If the Legislature intended that prisoners need only give notice of tort claims subject to the GTCA, section 566.4 would be redundant.  The same requirement is already encompassed in the GTCA itself.

Further, while the statute does not define tort or civil claim, both of these terms are readily understood.  Generally speaking, "civil" relates to "private rights and remedies that are sought by action or suit, as distinct from criminal proceedings. . . ."  Black's Law Dictionary (11th ed. 2019).  Meanwhile, a tort is a "civil wrong, other than a breach of contract, for which a remedy may obtained, usu. in the form of damages. . . ."  *Id.*

---

[17] Sheriff also argues that *Bosh* did not mention section 566.4, though it could have recognized that the cause of action recognized in that case was subject to notice requirements thereunder, had it deemed it applicable.  *Bosh* was a response to a series of four certified questions from a federal court, none of which concerned section 566.4.  Thus, *Bosh* appears distinguishable from *Hall*, where the Court was compelled to examine its jurisdiction and considered the application of section 566.4 *sua sponte*.

[18] As noted above, 51 O.S.2021, § 153 provides the state and political subdivisions are liable for loss resulting from the torts of its employees acting in the scope of employment.

Estate sought money damages for alleged injury to Martin's private rights, i.e., his private cause of action for excessive force. *See Bosh*, 2013 OK 9, at ¶ 23. Estate's claim for damages falls within the ordinary definition of a civil claim. Estate's excessive force claim alleges acts related to the duties of the employee, agent or servant of a county jail. These claims were subject to the notice provisions of the GTCA pursuant to the plain language of section 566.4. Thus, Estate could not file suit until notice was given and its claim was denied. Sheriff was not entitled to summary adjudication based on the run of a one-year statute of limitations. To the extent the trial court granted summary adjudication on this basis, the court erred.

### 2. *Bosh* claim (excessive force)

Sheriff also moved for summary adjudication on the substance of Estate's excessive force claim, premised largely on its account of Sanchez's actions. He argued the use of force was subject to the standard for excessive force articulated in *Washington v. Barry*, 2002 OK 45, 55 P.3d 1036, requiring that the evidence support a reliable inference of "wantonness in the infliction of pain." *Id.* at ¶ 12. However, *Washington*'s discussion of this standard concerned an incarcerated prisoner's cause of action for excessive force under the provisions of Okla. Const. art. 2, § 9 and the 8th Amendment of the United States Constitution, pertaining to cruel and unusual punishment. That standard does not apply here.

Martin was detained but not convicted. While a detainee has a cause of action based on excessive force, that claim arises under Okla. Const. art. 2, § 30, pertaining to unreasonable search and seizure. *See Bosh*, 2013 OK 9, at ¶ 22. As recognized in *Washington,* the analysis of excessive force claims by those convicted "must differ significantly" from the analysis applied by officers in making arrests. *Washington*, 2002 OK 45, at ¶ 9. "[P]laintiffs who are not prisoners have significantly broader rights arising from the application of force by police officers making arrests than do those who are incarcerated." *Id.* (citing *Graham v. Connor*, 490 U.S. 386 (1989)). We hold that, because Martin was detained but not convicted, an objective reasonableness standard applies here, as set forth in *Bryson v. Oklahoma Cnty. ex rel. Okla. Cnty. Detention Cntr.*, 2011 OK CIV APP 98, ¶ 19, 261 P.3d 627:[19]

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.
>
> ....
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them,

---

[19] *Bosh* considered the private cause of action for excessive force initially recognized in *Bryson*, and determined it was an appropriate extension of the Court's prior discussion of a potential cause of action in *Washington*.

without regard to their underlying intent or motivation.  An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

(quoting *Graham*, 490 U.S. 386, 396-97).[20]

Sheriff sought summary adjudication under the wrong standard.  He made no argument that the undisputed material facts, if any, demonstrated the conduct of his employees was objectively reasonable as a matter of law, and presented no authority in support of that point.  On summary judgment, "the movant must offer

---

[20] The Oklahoma Supreme Court has recognized that that a police officer does not stand in the shoes of an ordinary citizen when it comes to using force against another which exposes that person to injury.  Rather, the officer's duty is very specific: "it is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest."  *Morales v. City of Okla. City ex re. Okla. City Police Dept.*, 2010 OK 9, ¶ 26, 230 P.3d 869.  "The question is whether the objective facts support the degree of force employed."  *Id.*  Among the factors that may be considered in this evaluation is:

> (1) the severity of the crime of which the arrestee is suspected; (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) whether the suspect is actively resisting arrest or attempting to evade arrest; (4) the known character of the arrestee; (5) the existence of alternative methods of accomplishing the arrest; (6) the physical size, strength and weaponry of the officers compared to those of the suspect; and (7) the exigency of the moment.

*Id.* at ¶ 27.  This non-exclusive list is similar to that which the United States Supreme Court indicated may be relevant when considering the use of force of one arrested and detained, in *Kingsley v. Hendrickson*, 576 U.S. 389, 394 (2015), including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citing *Graham*, 490 U.S. at 396).

18

a statement of argument and authority demonstrating why the undisputed material facts entitle the movant to judgment as a matter of law." *Evers v. FSF Overlake Assocs.*, 2003 OK 53, ¶ 9, 77 P.3d 581 (emphasis omitted). "This burden exists whether or not any counter statement is filed by the non-moving party." *Id.* Sheriff did not meet that burden. To the extent the trial court granted summary judgment on claims against Sheriff on this basis, that ruling is reversed.

Further, Sheriff also argues he is entitled to summary adjudication on the excessive force claim, to the extent it arises from acts of other officers other than Sanchez who were dismissed with prejudice from the Estate's related federal suit.[21] Sheriff reasons that, because the officers were dismissed, Sheriff can no longer be held vicariously liable for their acts.[22] Again, we find Sheriff did not meet his burden to demonstrate summary judgment was warranted on this issue.

Ordinarily, "[c]laim preclusion bars relitigation by parties (or their privies) of issues which either were, or could have been, litigated in a prior action which resulted in a prior judgment on the merits." *Guilbeau v. Durant H.M.A., LLC*, 2023 OK 80, ¶ 10, 533 P.3d 764. Further, it is correct that, typically, release of the

---

[21] These officers were identified as Chairess, Bell-Edwards, Zweifel, McGuckin or Ely.

[22] Martin argued that Sheriff had failed to plead release as an affirmative defense and his argument should not be considered. Sheriff pled these officers were dismissed in his Answer, which is sufficient.

employee acts as release of the employer. *See generally Sisk v. J.B. Hunt Transport, Inc.*, 2003 OK 69, ¶ 7, 81 P.3d 55.

Here, Sheriff's motion proposed as undisputed fact only that a federal lawsuit was filed. Sheriff attached the federal complaint, which pled claims against these defendants for violation of 42 U.S.C. § 1983, wrongful death and state law tort claims, but did not assert an individual excessive force claim. Sheriff offered no authority or argument demonstrating that the dismissal of these claims in federal court was a bar to the assertion of a constitutional claim against Sheriff here; no analysis as to whether a constitutional claim was or could have been brought against the individuals in the previous action serving as a bar to further claims here; or, if not, whether dismissal of related claims against the individuals could act as a bar to claims against the Sheriff here. To the extent the trial court granted summary judgment on claims against Sheriff, that ruling is reversed.

### C.    Wrongful Death Claims

In addition to the excessive force claims, Estate also asserted (1) "wrongful death/survival claim under state tort law within the scope of employment," against Sheriff for the tortious acts of its employees, and (2) "wrongful death/survival claim under state law outside the scope of employment," against Sanchez, which is not at issue on appeal.

20

Sheriff asserted that he was immune from Estate's wrongful death claim under various exemptions provided by the GTCA.  In response, Estate admitted its wrongful death claim was based purely upon the excessive force claim.  By its very nature, Estate's wrongful death claim is premised upon Martin's right of recovery for injury had he lived.  *See generally* 12 O.S.2021, § 1053; *Boler v. Security Health Care, L.L.C.*, 2014 OK 80, 336 P.3d 468.  Estate asserts but one claim, for wrongful death based on Martin's alleged death as a result of excessive force.  As stated above, Sheriff did not meet his burden to demonstrate he was entitled to summary adjudication on that claim.  To the extent the trial court granted summary adjudication to Sheriff on this basis, that ruling is reversed.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of Estate's claims against Armor.  We reverse the trial court's grant of summary adjudication to Sheriff on Estate's wrongful death claim arising from excessive force, and we remand this case to the trial court for further proceedings.

**AFFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

HUBER, P.J., and BLACKWELL, J., concur.

February 27, 2024