**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JESICA STEWART, as Next Friend of Joseph Stewart, deceased,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. CIV-23-1046-JD** |
| **TURN KEY HEALTH CLINICS, LLC, et al.,** | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, as Next Friend of Joseph Stewart, filed this action pursuant to Oklahoma tort law and 42 U.S.C. § 1983. (Doc. 1, at Ex. 2).[1] United States District Judge Jodi W. Dishman referred the matter to the undersigned Magistrate Judge consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 3).

Before the Court is Plaintiff's Opposed Motion for Leave to File Second Amended Complaint ("Motion"). (Doc. 108). Defendants filed a response in opposition ("Response"), (Doc. 111), and Plaintiff filed a reply brief ("Reply"). (Doc. 116). As explained fully below, the undersigned recommends the Court **DENY** the Motion. (Doc. 108).

---

[1] Citations to a court document are to its electronic case filing designation and pagination. Quotations are verbatim unless indicated.

## I. Background

This case arises out of the death of Plaintiff's husband, Joseph Stewart, on July 15, 2021, immediately after his transfer out of the Cleveland County Justice Center ("CCJC"). (Doc. 1, at Ex. 2, at 19-20). Plaintiff sued Turn Key Health Clinics, LLC ("Turn Key"); Chris Amason, the Sheriff of Cleveland County and facility policymaker, in his official capacity; and four Turn Key employees based on their alleged involvement in Mr. Stewart's death.[2] (*Id.* at 1-2). Currently, the sole claim against Defendants Natasha Kariuki and Christina Meza (collectively, the "Nurse Defendants"), two licensed practical nurses employed by Turn Key at the time of the events underlying this lawsuit, is for negligence under Oklahoma law. (*Id.* at 2, 17-18, 21).

### A. Plaintiff's Complaint and Defendants' Responses

On March 13, 2023, Plaintiff filed this action as a Petition in Oklahoma state court alleging negligence against Turn Key. (*Id.* at Ex. 1, at 14). On July 14, 2023, Plaintiff filed her Amended Petition in the state court to add the Nurse Defendants, as well as other employee defendants and Sheriff Amason. (*Id.* at Ex. 2, at 1-2). The Amended Petition added deliberate indifference claims against Turn Key and Sheriff Amason, but only alleged negligence against the Nurse Defendants. On November 16, 2023, Defendants removed the action to this Court under 28 U.S.C. § 1441 because Plaintiff's allegations arise under 42 U.S.C. § 1983. (Doc. 1, at 2).

---

[2] Sheriff Amason and one of the Turn Key employees are no longer parties to this litigation. (*See* Doc. 31, at 5; Doc. 34).

On November 27, 2023, Defendants filed Motions to Dismiss. (Docs. 10-11). After being granted additional time to respond, (Doc. 13), Plaintiff filed Responses in Opposition on January 12, 2024. (Docs. 14-15). In her Response in Opposition to the Motions to Dismiss, Plaintiff submitted that "[t]o the extent the Court determines the pleading is deficient, Plaintiff respectfully requests the Court to grant leave to amend." (Doc. 15, at 18). The Reports and Recommendations on the Motions to Dismiss advised that, "to request leave to amend, Plaintiff must submit a separate motion with the proposed amendment attached as an exhibit, per the local rules. LCvR7.1(c); LCvR15.1." (Doc. 23, at 23; Doc. 25, at 14). When the Court denied in part and granted in part the motions to dismiss on October 22, 2024, the Court stated, "Should Stewart wish to amend her complaint, she must follow the Federal and Local Civil Rules of Procedure and the deadlines in any scheduling order. *Cf.* LCvR7.1(c) ('A response to a motion may not also include a motion or a cross-motion made by the responding party.')." (Doc. 31, at 11).

Defendants filed their answers on November 5, 2024. (Docs. 35-38). Defendants' answers raise 41 affirmative defenses and reserve the right to add more, but they do not raise immunity. (*Id.* at 5-12).

**B. Scheduling Order and Extensions**

The Court entered the first Scheduling Order on January 13, 2025. (Doc. 42). The Scheduling Order states that "Federal Rules of Civil Procedure 1, 6(b), and 16(b)(4), and good cause/excusable neglect standards for extensions [were] discussed." (*Id.* at 3). The original deadline to join new parties and amend pleadings was set to expire on January 27,

2025. (*Id.* at 1). On January 27, 2025, Plaintiff filed a motion to extend the amendment/joinder deadline by 60 days. (Doc. 45, at 1). On February 25, 2025, the Court granted the motion to extend and extended the deadline for motions to amend pleadings to March 28, 2025. (Doc. 48). This deadline expired on March 28, 2025, and was never extended.

On May 19, 2025, the parties jointly requested "that the Court enter an Order extending all remaining deadlines contained within by one hundred twenty (120) days." (Doc. 51, at 1). Neither party requested an extension of the deadline to join new parties or amend pleadings. (*See generally id.*). On May 21, 2025, the Court granted the requested extension and entered the First Amended Scheduling Order. (Doc. 55). On November 11, 2025, the parties again moved to extend all remaining deadlines, this time by 60 days. (Doc. 78, at 1). Neither party requested an extension of the deadline to join new parties or amend pleadings. (*See generally id.*). On November 14, 2025, the Court granted the parties' second requested extension and entered the Second Amended Scheduling Order. (Doc. 79).

Plaintiff failed to timely file an extension request before the witness and exhibit list deadline on February 2, 2026. (Doc. 90, at 2). On February 24, 2026, Plaintiff filed an opposed motion requesting the Court to "issue an extension of all dates on the current scheduling order." (Docs. 89-90). On March 4, 2026, the Court granted Plaintiff's motion over Defendants' objection, (Doc. 91), and issued the Third Amended Scheduling Order. (Doc. 92). On June 29, 2026, the parties jointly requested the Court to extend discovery

and summary judgment deadlines. (Doc. 103). On June 30, 2026, the Court extended discovery and summary judgment deadlines to August 17, 2026, without disturbing other deadlines in the Third Amended Scheduling Order. (Doc. 104).

From the time of the parties' Rule 26(f) conference on November 21, 2024, (Doc. 40, at 4), to the final extended discovery deadline on August 17, 2026, (Doc. 104), the parties had 634 days of discovery, or almost a year and nine months.

### C. Defendants' Motion for Summary Judgment and Plaintiff's Motion to Amend

On March 11, 2025, before the expiration of the amendment deadline on March 28, 2025, the Oklahoma Supreme Court decided *Estate of Sanders v. Turn Key Health Clinics*, 566 P.3d 591 (Okla. 2025). Defendants take the position that, under *Sanders*, "the immunity granted to employees under the [Oklahoma Governmental Tort Claims Act ("GTCA")] does extend to a jail's healthcare contractor such as Turn Key as well as Turn Key's employees." (Doc. 88, at 5). Plaintiff agrees that *Sanders* "appears to foreclose claims under state law against private for-profit correctional medical companies and their employees by extending GTCA immunity to private companies." (Doc. 109, at 2).

On April 29, 2025, defense counsel advised Plaintiff that Defendants intended to assert immunity in dispositive motions against the state law negligence claims. (*Id.*) On April 30, 2025, Plaintiff's counsel advised defense counsel that Plaintiff intended to add § 1983 claims against the Nurse Defendants if the negligence claims were subject to immunity. (*Id.* at Ex. 1, at 1).

On February 19, 2026, the Nurse Defendants moved for summary judgment because they contend they are "immune from liability" for negligence "pursuant to the Oklahoma [GTCA]." (Doc. 87, at 2; Doc. 88, at 2). On March 17, 2026, Plaintiff responded to the motions to dismiss. (Docs. 93-94). In her responses, Plaintiff submitted that, "[i]n the event the Court grants the motion, Plaintiff requests leave to file an amended complaint adding a § 1983 deliberate indifference claim against [the Nuse Defendants] individually." (*Id.* at 14). The Report and Recommendation on the Motions for Summary Judgment again stated that "[u]nder the Local Rules, '[a] response to a motion may not also include a motion or a cross-motion made by the responding party.' LCvR 7.1(c)," and the undersigned recommended the request be accordingly denied. (Doc. 105, at 15). On July 23, 2026, Plaintiff objected to the Report and Recommendation concerning denial of leave to amend. (Doc. 107).

On July 23, 2026, Plaintiff filed the instant Motion and properly moved the Court for the first time for leave to amend her Complaint to add individual claims under 42 U.S.C. § 1983 for deliberate indifference against the Nurse Defendants. (Doc. 108, at 1).[3] On August 13, 2026, Defendants filed their Response to the Motion. (Doc. 111). On August 20, 2026, the Plaintiff filed her Reply. (Doc. 116).

[3] On August 26, 2026, the Court found that Plaintiff's objection to the Report and Recommendation was moot because Plaintiff had filed a motion for leave to amend. (Doc. 117, at 9-10).

## II. Legal Standard

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citation omitted). First, Rule 16(b)(4)'s good cause showing "requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Id.* at 1240 (citation, quotations, and bracketing omitted). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Id.* Good cause "is usually occasioned by something that is not within the control of the movant." *Bishop v. Corsentino*, 371 F.3d 1203, 1207 (10th Cir. 2004).

Rule 16's good cause requirement is "the threshold inquiry" to determine "whether amendments should be allowed after a scheduling order deadline has passed." *Gorsuch*, 771 F.3d at 1241. The district court has "considerable discretion in determining what kind of showing satisfies" the good cause standard under Rule 16(b)(4). *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (quoting 3 James Wm. Moore, Moore's Fed. Prac. – Civ. § 16.14[1][b] (3d. ed. 2019)). Indeed, the Tenth Circuit has "often found untimeliness alone a sufficient reason to deny leave to amend, 'especially when the party filing the motion has no adequate explanation for the delay.'" *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)). "Good cause is likely to be found when the

moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Tesone*, 942 F.3d at 988 (citations and quotations omitted).

Second, Rule 15(a)(2) requires this Court "freely give leave [to amend] when justice so requires."[4] Amendment should be freely permitted when justice requires, but not if there exists "any apparent or declared reason" to deny the amendment, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay raising an issue until the eve of trial." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (citations, quotations, and bracketing omitted).

If the movant fails to satisfy either standard – (1) good cause under Rule 16(b)(4) or (2) Rule 15(a) – then the Court may properly deny the motion for leave to amend. *Gorsuch*, 771 F.3d at 1241. But "if the movant fails to show good cause under Rule 16(b),

[4] Plaintiff cannot amend as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), and Defendants do not consent to the amendments, *see* Fed. R. Civ. P. 15(a)(2).

there is no need for the Court to move on to the second step of the analysis." *Tesone*, 942 F.3d at 990 (citations, quotations, and bracketing omitted).

**III. The Court Should Not Give Leave to Amend Because Plaintiff Has Not Demonstrated Good Cause.**

Plaintiff's delay has not been caused by discovery of new facts or changes in the underlying law. "The proposed claims arise from the same encounters, medical records, and deposition testimony that underlie the negligence claims." (Doc. 108, at 4). Plaintiff was ready "to amend the lawsuit to add 1983 claims against the individuals" as early as April 30, 2025. (Doc. 109, at Ex. 2, at 1). Plaintiff's principal argument for why she has good cause to amend her Complaint at this juncture is that the Defendants asserted immunity on February 19, 2026, in their Motions for Summary Judgment. (Doc. 116, at 3). But Plaintiff was not required to wait until Defendants' motions for summary judgment to attempt to amend her complaint. Plaintiff "declin[ed] to" file her motion beforehand, (Doc. 116, at 3), apparently for strategic reasons. *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990) (affirming denial of motion to amend where the failure to assert the claim was a "tactical decision").

Plaintiff supports her argument for good cause by asserting that she was "not dilatory for declining to plead around an affirmative defense that no defendant has raised." (Doc. 116, at 3). But that is not enough to show good cause because untimeliness is sufficient to deny leave to amend absent adequate explanation. It is Plaintiff's responsibility to plead her theories of liability, not to hold them in reserve to react to affirmative defenses. Moreover, Plaintiff knew as of April 29, 2025, that "Defendants

intended to file dispositive motions asserting state law immunity against Plaintiff's state law negligence claims." (Doc. 109, at 2).

Even if the raising of the immunity defense itself supported good cause, Plaintiff caused significant delay by insisting on requesting leave to amend "in the alternative" in her responses. (Doc. 107, at 2). Plaintiff was warned four times that requests to amend could not be included in a response to a motion. (Doc. 23, at 23; Doc. 25, at 14; Doc. 31, at 11; Doc. 105, at 15). "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Tesone*, 942 F.3d at 989 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Plaintiff filed her Motion on July 23, 2026, more than five months after the Nurse Defendants raised the immunity defense. (Doc. 108).

Plaintiff's actions here resemble those of the plaintiff in *Pallottino v. City of Rio Rancho*. In *Pallottino*,

> [t]he proposed amendment was not based on new evidence unavailable at the time of the original filing. Instead, it proposed a theory that Mr. Pallottino did not choose to advance until after his primary theory had been dismissed. As other courts of appeal have stated:
>
>> "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but 'equal attention should be given to the proposition that there must be an end finally to a particular litigation.' [Citation omitted.] . . . Much of the value of summary judgment procedure in the cases for which it is appropriate . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come

> back along thereafter and fight on the basis of some other theory."

31 F.3d at 1027 (alterations in original) (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469-70 (5th Cir. 1967)). Here, Plaintiff had explicitly intended to advance the § 1983 theory only if the negligence theory failed. "Plaintiff asked for leave only in the alternative, if the Court granted summary judgment." (Doc. 107, at 2). Although Plaintiff now unqualifiedly seeks to amend, (Doc. 109), the purpose of Plaintiff's delay was to present her theories to the Court one after another.

The Court should find that Plaintiff has not demonstrated good cause for leave to amend after the scheduling order deadline. It is not necessary for the Court to reach Rule 15(a)(2) because Plaintiff lacks good cause under Rule 16(b)(4). *See Tesone*, 942 F.3d at 990. However, the undersigned would also recommend denying leave to amend under Rule 15(a)(2) due to Plaintiff's undue delay and untimely attempts to salvage the case through new theories of recovery.

## IV. Conclusion

Plaintiff has failed to establish good cause under Rule 16(4)(b) to add § 1983 claims against the Nurse Defendants 482 days after the deadline to amend or add new parties. Therefore, Plaintiff's Motion should be **DENIED**.

## V. Recommendation and Notice of Right to Object

For the foregoing reasons, the court should **DENY** the Motion. (Doc. 108). The Court should also **DENY** the "Unopposed Motion to Withdraw Qualified Nature of the Request for Leave to Amend" as **moot**. (Doc. 109).

**The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court on or before October 30, 2026,** under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to file a timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not terminate the referral.

**ENTERED** this 16th day of October, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE